UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JANETTE HERNANDEZ PAGAN, PPA<br>FTH, a minor<br><br>    Plaintiff<br><br>v.<br>CITY OF HOLYOKE, A MUNICIPAL<br>CORPORATION, Officer THOMAS J. LEAHY,<br>Officer JAMES DUNN and Officer JABET LOPEZ<br>    Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

# REDACTED COMPLAINT AND REQUEST FOR JURY TRIAL[1]

## INTRODUCTION

1. This is an action in civil rights and tort to recover for injuries three Holyoke police officers inflicted on a 12-year-old boy, FTH, by beating him unconscious on February 8, 2014, after he had surrendered to them and posed no reasonably perceptible threat of harm to any person. On that date police responded to shots fired by a distraught and suicidal man, whom they took into custody without incident. FTH was unarmed and was on the scene only because he had been trying to dissuade the man from harming himself. As the officers arrived and quickly subdued the potential suicide victim, FTH initially hid and then tried to flee. But then on an officer's orders he stopped, kneeled and raised his arms. Rather than searching and questioning the boy the officers assaulted him without cause, inflicting a concussion, deviated nasal septum, multiple abrasions and contusions to the scalp, face, chin and left ear, contusions to the chest wall and other injuries. Then they falsely arrested and detained him and subsequently prosecuted him maliciously on trumped criminal charges. His criminal charges were *nolle prosequi*.

## JURISDICTION

2. There is no reasonable likelihood that recovery in this suit will be less than or equal to $25,000.

3. This Honorable Court has original jurisdiction of the action as per M.G.L. c. 212 § 3.

   In addition, the Massachusetts Superior Court has jurisdiction to hear federal claims. See,

---

[1] Filed in accordance with Mass. Local Fed. Rule 5.3.

1

e.g., *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980), *Claflin v. Houseman*, 93 U.S. 130 (1876).

4. On information and belief each defendant is within the personal jurisdiction of the Court.

## VENUE

5. Venue in this Court is proper per M.G.L. c. 223, § 1 and 258 § 3

## PARTIES

6. Plaintiff Janette Hernandez Pagan ("Ms. Hernandez Pagan") is the mother and next friend of FTH, a minor. They reside in Winter Haven, Florida.

7. Ms. Hernandez Pagan sues on behalf of her son and herself.

8. Defendant Thomas J. Leahy ("Officer Leahy"), was at all pertinent times a duly appointed and sworn Police officer of the City of Holyoke, and he resides at 22 Columbus Avenue, Holyoke, Hampden County, Massachusetts.

9. Defendant James Dunn ("Officer Dunn"), was at all pertinent times a duly appointed and sworn Holyoke Police officer, and he resides at 48 Hithcock Street, Holyoke, Hampden County, Massachusetts.

10. Defendant Jabet Lopez ("Officer Lopez"), was at all pertinent times a duly appointed and sworn Holyoke Police officer, and he resides at 115 Elmer Drive, Chicopee, Hampden County, Massachusetts.

11. Defendant City of Holyoke ("the City") is a duly organized city in the Commonwealth of Massachusetts.

12. At all pertinent times each defendant acted under the color of law with the powers and authority of a police officer or of a municipality under the law of Massachusetts and/or the ordinances, regulations, and policies of the City of Holyoke.

13. Each individual defendant is sued in his personal capacity.

## FACTS

14. On February 8, 2014, FTH was 12 years old, five feet two inches tall, weighed about 110 pounds and lived with his mother at 15 North Summer Street in Holyoke, Massachusetts.

15. On the said date FTH was outside of his apartment complex when a distraught neighbor, Edgar Zayas ("Mr. Zayas") began to talk irrationally about killing himself and began waiving a .44 caliber handgun.

16. FTH and another neighbor, Jose Rivera ("Mr. Rivera) spoke to Mr. Zayas in an effort to calm him and to persuade him not to harm himself and to return to his apartment.

17. FTH and Mr. Rivera followed Mr. Zayas as he walked away from the building and continued trying to reason with him.

18. FTH did not have a cell phone with which to call police for help.

19. He followed Mr. Zayas from a distance of about 10 feet, telling him repeatedly "Don't do it, don't it . . . Put it [the gun] down. You don't need to do this."

20. FTH and Mr. Rivera followed Mr. Zayas to the Vietnam Memorial Bridge in Holyoke, where he fired his gun into the air twice.

21. When Mr. Zayas fired the gun FTH panicked and went down on the ground next the bridge, but then resumed following and speaking to him.

22. Mr. Zayas stopped firing the gun and FTH continued to follow him until Mr. Zayas fired his weapon at three traveling vehicles.

23. Mr. Zayas then fired several times more and aimed the gun at his chin.

24. Responding to reports of shots fired Holyoke and South Hadley police converged on the scene.

25. Upon the arrival Officer Leahy and another officer detained Mr. Rivera at gunpoint, handcuffed him and upon searching him found no weapons.

26. Mr. Rivera told them "the guy you are looking for is on the bridge" as he pointed towards the South Hadley bridge, and stated that the only person with a gun was Mr. Zayas.

27. Mr. Rivera was immediately released from custody by police.

28. Police spotted Mr. Zayas, ordered him to drop the gun and when he failed to obey they tackled and disarmed him.

29. Panicked and not knowing what he should do, FTH first sought safety behind a wall and then tried to flee the scene, running toward Officer Healy's police cruiser.

30. Emerging from his cruiser, Officer Healy pointed his service weapon at FTH who froze in response to the officer's order.

31. Officers Dunn and Lopez also arrived and FTH told the officers "I don't have a weapon with me, I did not do anything."

32. FTH was told to put his hands behind his back and to go to his knees, and he complied. At no time did he make any gesture or statement that could reasonably be perceived as threatening to the officers.

33. The officers seized him and though he did not resist they began striking him with their feet and/or knees, a baton and/or with a hard blunt object on his back, ribs, and head until he passed out.

34. The officer scraped FTH' face against the road surface causing a number of facial injuries.

35. FTH regained consciousness in the back of a Holyoke police cruiser handcuffed and asked police "How did I get here?"

36. To explain FTH' injuries in a report Officer Leahy made up a story that while on the ground FTH appeared to be trying to retrieve something from under body and that police arrested him "after a brief struggle…"

37. Officer Lopez admitted in a police report that he struck FTH with a baton but misrepresented the actual number of times he struck and did not mention that FTH was kicked and kneed on the back and hit in the head with a blunt instrument.

38. Officer Dunn admitted in a police report that he ran from behind and "tackled him to the ground" but did not describe the beating or the multiple traumatic injuries FTH sustained.

39. There was no legal justification for the officers' actions, and in their reports each of them lied and/or omitted facts about FTH' conduct or how he was injured.

40. FTH was transported to the Holyoke Police Department (HPD) for booking and an ambulance was called for him, but though officers knew he was a minor no effort was made to contact his mother.

41. When she came to the scene of the incident looking for her son police informed Ms. Hernandez Pagan that they had not arrested a child.

42. When she came to the police station she was told at first no child had been detained but was then shown booking photos of her injured son and informed he had been transferred to a hospital.

43. At the station she spoke with Officer Leahy, who said that her son was going to the hospital small scratches as if he had fallen off a bicycle.

44. Officer Leahy did not describe to Ms. Hernandez Pagan the type of force used n FTH or the full extent of his injuries.

45. Officer Leahy also told Ms. Hernandez Pagan that she could take her son back home after he was discharged from the hospital.

46. FTH was transported to the Holyoke Medical Center ("HMC") by ambulance and vomited in the ambulance.

47. Paramedics found abrasions to the right side of his face and swelling on the left side of his face.

48. No one at the HPD told EMT's that they had kicked, kneed or hit FTH with a police baton or a blunt instrument.

49. At the hospital Ms. Hernandez Pagan first saw the full extent of her son's injuries and spoke with HPD Officers Heredia and Lopez.

50. Officer Heredia told her that her son would be held at a juvenile detention center and refused to give her the address of the detention center for, he said, "security" reasons.

51. Ms. Hernandez Pagan asked Officer Lopez if he had witnessed her son's arrest or participated in it. Officer Lopez told her he had not.

52. When Ms. Hernandez Pagan told Officer Lopez she could not believe what police did to her son, Officer Lopez, apologized to Ms. Hernandez Pagan stating he wanted to apologize on behalf of his colleagues for what had happened to FTH.

53. FTH was brought in police custody to HMC complaining of severe pain and possible loss of consciousness.

54. Doctors found multiple abrasions to his face and he complained of facial pain.

55. The attending physician reported the police description of the incident that made no mention of blows to FTH' head, back or body with a police baton or with a blunt instrument.

56. FTH was diagnosed with a concussion and contusions swelling in his ear and with other contusions. A head computed tomography found mild biparietal scalp and facial soft tissue swelling from contusion injury to FTH.

57. The CT scan found that FTH nasal septum was deviated to the left of the midline.

58. That night FTH was held at a juvenile detention center in Springfield where he spent the night scared, anxious and in pain.

59. He was maliciously charged with resisting arrest and with disorderly conduct.

60. There was no legal justification for the criminal charges brought against him and for sending him to a detention center.

61. FTH remained at the Springfield juvenile detention center until February 9, 2014, at 5 PM, when he was released to his mother.

62. Upon his release Ms. Hernandez Pagan took FTH to Bay State Medical Center ("BSMC") where he complained of abdominal pain and abrasions all over of his face including his left ear, face and chin.

63. BSMC doctors found abrasions and a small hematoma on the anterior left scalp of FTH and a swollen ear. He was diagnosed also with a head injury and contusions to his chest wall.

64. A photo taken the day after his beating shows he had a cut in the middle to upper portion of his nasal bone as well as swelling in the area of his nasal septum.

65. The blows delivered by Officers Healy, Lopez, and Dunn to FTH caused him blunt trauma and excruciating pain in various parts of his body.

66. When Defendants assaulted and injured FTH they knew he was unarmed and that the only other persons at the scene of the shooting incident, Mr. Zayas was in custody and had been disarmed.

67. They also knew from Mr. Rivera's brief detention that the only armed individual was Mr. Zayas.

68. The use of force Defendants utilized was intended to cause FTH to suffer pain, humiliation, degradation and caused a high risk of serious injury.

69. No reasonable officer would have manhandled, tackled, kicked, kneed or strike FTH under the circumstances and doing so served no legitimate purpose.

70. Defendants conduct grossly deviated from acceptable standards of police conduct and from the HPD general orders governing the use of force, and from standards of reasonable care.

71. **Ex. 1**, is a fair and accurate of a group of photographs that depict his injuries in the aftermath of his assault.

72. Criminal charges were maliciously brought by defendants in this action.

73. In addition to his physical injuries, and pain and suffering as described above, FTH suffered other cognitive and emotional injuries, some which continue to this day.

74. The City of Holyoke failed to investigate and discipline any of the officers that came in contact with the plaintiff.

75. Prior to this incident and continuing the City had a policy, usage and custom of not investigating complaints of police misconduct and in particular those that involved excessive force and by failing to respond with appropriate training, counseling, supervision or disciplining officers in order to minimize and prevent such incidents.

76. Upon information and belief the City had a custom and practice of condoning code of silence among officers by which it was understood that an officer witnessing misconduct by another officer(s) would not report it notwithstanding a duty to do so.

77. Upon information and belief, the HPD had a custom and practice of making it difficult

for citizens to file complaints about the conduct of HPD officers and of failing to investigate and discipline officers for the use of excessive force.

78. Upon information and belief, the HPD and its Chief failed to monitor the use of force by failing to require officers to explain in writing injuries to people arrested.

79. Upon information and belief, HPD officers routinely submitted injured prisoner reports that contained incomplete information that underreported the use of force, the circumstances that necessitated force and the nature of an arrestees injuries.

80. Because officers knew nothing would happen to them in the event of a misconduct complaint, and because they knew that the filing of false reports, use of force reports or incomplete prisoner injury reports incurred no consequence, they had no concern that the use of excessive force would lead action against them.

81. Indeed, the City failed to investigate Plaintiff's complaint of excessive force even after his counsel filed with Mayor Morse a notice of presentment under the Massachusetts Torts Claims Act on March 23, 2015 advising him FTH, who at the time was twelve (12) years old and weighed approximately one hundred (100) pounds, was subjected to a false and violent arrest by Holyoke Police Department Officers Thomas J. Leahy, Jabet Lopez and James Dunn. At the time of the arrest, FTH was physically beaten by these officers one or more whom struck the child repeatedly with a baton. After beating and arresting FTH, these same officers maliciously and falsely sought criminal charges against him, as well as deprived him of his mother's company at a time when the child was scared and physical in pain."

82. By their actions the defendants deprived Ms. Hernandez Pagan of her son's consortium.

83. By their actions the defendants cause FTH suffer serious physical injuries, trauma, great pain of body and mind and emotional distress.

84. On July 16, 2015 all criminal charges against him were *nolle prosequi*.

## COUNT I
## 42 U.S.C. § 1983: Unreasonable Force
## Healy, Dunn, Lopez

85. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

86. Defendants, while acting under color of law, used unreasonable force against FTH, and thereby violated the clearly established rights of each of them under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of unreasonable force by police officers.

87. Defendants acted with reckless disregards for Plaintiffs' constitutional rights.

88. As a direct and proximate result of the foregoing, the Plaintiffs suffered the injuries described above.

### COUNT II
### 42 U.S.C. § 1983: Monell Claim
### City of Holyoke

89. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

90. The policies and customs of the City as described above were the moving force behind the violation of the Plaintiff's constitutional rights by Defendants.

91. The policies and customs of the City and their failure to supervise and discipline was the moving force behind the violations of Plaintiff's constitutional rights.

92. As a direct and proximate result of the foregoing, the Plaintiffs suffered the injuries described above.

### COUNT III
### Assault and Battery
### And Assault and Battery with a dangerous weapon
### Healy, Dunn, Lopez

93. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

94. Defendants committed the tort of assault and battery against each of the plaintiffs by assaulting and battering them without legal justification, cause, excuse, or privilege.

95. As a direct and proximate result thereof, the plaintiffs suffered the injuries as described above.

### COUNT IV
### False Arrest
### Healy, Dunn, Lopez

96. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

97. Defendants arrested plaintiff without probable cause.

98. As a direct and proximate result thereof, the plaintiffs suffered the injuries as described above.

## COUNT V
## Malicious Prosecution
## Healy, Dunn, Lopez

99. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

100. Defendants caused criminal charges to be brought against plaintiff for which there was no probable cause, and he maliciously and for no lawful purpose assisted, participated in and otherwise caused this plaintiff to be criminally prosecuted.

101. The resolution of FTH criminal charges was favorable to him.

102. As a direct and proximate result thereof, plaintiff, lost time from his usual activities to attend court and to participate in his defense, and suffered concern and worry due to the reasonable perception that his liberty, well-being and good name were at imminent and serious risk as a result of his criminal prosecution.

## COUNT VI
## Massachusetts Civil Rights Act, M.G.L. c. 112 § 11IM
## Healy, Dunn, Lopez

103. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

104. By means of use of threats, intimidation and coercion, defendants violated the civil rights of both plaintiffs under the laws of the Commonwealth of Massachusetts.

105. As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## COUNT VII
## Intentional Infliction of Emotional Distress
## Healy, Dunn, Lopez

106. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

107. By his actions, Defendants subjected FTH to reprehensible conduct beneath any standard of human decency knowingly, intentionally, willfully, purposely, maliciously and with such reckless disregard of the consequences as to display a conscious indifference to, and an intention to inflict, harm and injury.

108. The conduct of defendants constituted intentional infliction of emotional distress.

109. As a direct result of the intentional conduct of the defendants in this count, FTH suffered severe emotional distress and great pain of body and mind.

## COUNT VIII
## Mass Tort Claims Act
## City of Holyoke

110. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

111. At all times material to this complaint all defendants were within the course of their employment.

112. On March 23, 2015, FTH's counsel served the Town with a letter of Notice and Presentment under the Massachusetts Tort Claims Act.

113. The letter appraised the City of his allegations and the injuries he sustained as a result of the conduct of its employees.

114. Plaintiff satisfied all conditions precedent to file this negligence action under Chapter 258 § 4.

115. Defendants have not compromised the claim.

116. As a direct and proximate result of the negligent conduct of the City's employees, FTH and Ms. Hernandez Pagan were harmed as set forth herein.

## COUNT IX
## Loss of Consortium

117. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

118. By their actions, Defendants deprived Ms. Hernandez Pagan of consortium with her son.

## **DEMANDS FOR RELIEF**

The Plaintiff hereby respectfully requests the following relief:

1. All compensatory damages recoverable;

2. Injunctive relief;

3. All punitive damages recoverable;

4. All attorney's fees, costs and expenses allowable;

5. Any and all other relief as the Court deems just and proper;

**PLAINTIFFS DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT**

        Respectfully submitted,
        Plaintiff JANETTE HERNANDEZ PAGAN
        PPA FTH
        By her attorneys,

        */s/ Hector E. Pineiro*
        _____
        Hector E. Pineiro BBO # 555315
        Robert A. Scott BBO # 648740
        Law Office of Hector E. Pineiro, P.C.
        807 Main Street
        Worcester, MA 01610
        Tel. (508) 770-0600
        hector@pineirolegal.com
        robin@pineirolegal.com

DATED: April 7, 2017