```
            UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF MASSACHUSETTS - WESTERN DIVISION


                                C.A.No.: 3:17cv30031




    JANETTE HERNANDEZ PAGAN, PPA
    F.H., a minor,
         PLAINTIFF

    vs.

    CITY OF HOLYOKE, A MUNICIPAL CORPORATION,
    OFFICER THOMAS J. LEAHY, OFFICER JAMES
    DUNN, OFFICER JABET LOPEZ
         DEFENDANTS




    ------------------------------------------------
             DEPOSITION OF:  JAMES NEISWANGER
    ------------------------------------------------




         Taken before Roxanne C. Costigan,
    Certified Merit Reporter, Notary Public, pursuant to
    Rule 30 of the Federal Rules of Civil Procedure, at
    the law offices of ACCURATE COURT REPORTING, INC.,
    1500 Main Street, Suite 222, Springfield, MA, on
    February 23, 2018.




                        Roxanne C. Costigan
                        Certified Merit Reporter
```

```
 1
     APPEARANCES:
 2

 3   FOR THE PLAINTIFF:

 4   HECTOR E. PINEIRO LAW OFFICES
     907 Main Street
 5   Worcester, MA  01610
     508-770-0600
 6        BY:   HECTOR E. PINEIRO, ESQ.
                Hector@pineirolegal.com
 7
     JEANNE A. LIDDY LAW OFFICES
 8   1380 Main Street, Suite #404
     Springfield, MA  01103
 9   413-781-7096
          BY:   JEANNE A. LIDDY, ESQ.
10                Liddylaw2005@yahoo.com

11

12   FOR THE DEFENDANT:

13   REARDON, JOYCE & AKERSON, P.C.
     4 Lancaster Terrace
14   Worcester, MA  01609
     508-754-7285
15        BY:   AUSTIN M. JOYCE, ESQ.
                Ajyoce@rja-law.com
16
              CATHERINE JOYCE, ESQ.
17

18
     FOR THE DEFENDANT:
19
     CHARLES J. EMMA LAW OFFICE
20   P.O. Box 510030
     Punta Gorda, FL  33951
21   413-297-6367
          BY:   CHARLES J. EMMA, ESQ.
22                Charlesemmalaw@gmail.com

23

24
```

```
 1   trigger.
 2       Q.    So, you understand that -- what about
 3   Jabet Lopez, had Jabet Lopez had any other
 4   disciplinary matters?
 5       A.    No. Jabet Lopez is a good officer. As a
 6   matter of fact, in this particular incident, I think
 7   he was fairly new out of the academy, I think.
 8       Q.    Okay. So, what's your understanding --
 9   so, you understand that these three officers came in
10   contact with Felix Torres?
11       A.    Yes.
12       Q.    What do you understand the facts to be,
13   you know, from reading the reports of what happened
14   between them and Felix Torres?
15       A.    We got a report, shots being fired on the
16   bridge, three people involved, dark hoodie, gray
17   hoodie. We go down there. I think Tom Leahy who
18   encountered, I'm going to call him gentlemen A, I
19   don't recall his name, stopped him at gunpoint, patted
20   him down, said, Hey, the guy you're looking for is
21   over that direction.
22       Q.    Was that Mr. Rivera, the one you're
23   referring to?
24       A.    I believe so.
```

1  Q.   Okay.
2  A.   You know, and so, the guy you are looking
3  for was over in this direction.  I think Leahy's
4  trying to grab this information.  From what I recall,
5  the prime suspect comes walking up with a gun.  The
6  officers at the time deal with that.  Another officer
7  comes up and tackles him and they end up having to
8  wrestle with him and taser the gun out of his hand and
9  taser him and take him into custody.
10       At the same time, Tom Leahy sees another
11 a person by some wall, squatting down, taking off
12 running in a gray hoodie.
13 Q.   Okay.
14 A.   Tom Leahy goes after that person.  Again,
15 as far as the officers knew, there were three people
16 involved.  Tom Leahy really encountered three people.
17 Now, the first person, the second --
18 Q.   Who didn't have a gun?
19 A.   Hang on.
20 Q.   Okay.
21 A.   You know.
22 Q.   Please, yeah.
23 A.   The first person, second person, and then
24 the third person, which was described to the officers.

He goes after his car to get him.  He goes down.  At some point, he comes across him, stops him, orders him to stop at gunpoint.  I guess he stops, crouches down, doesn't get down on ground, as instructed, and I believe at that point, Jamie Dunn and Jabet Lopez come up.  Jamie Dunn tackles him.  Jamie Dunn and I think Tom Leahy are trying to get his hands out from underneath him.  I believe Jamie Dunn strikes him a couple times.  Jabet Lopez comes up with -- comes up, has his baton.  He tells him stop resisting.  He has his hands underneath, won't bring his hands out.  Strikes him a couple times.  Hands come out.  He gets handcuffed.

Q. So, let me bring you to the point where Officer Leahy first encounters this boy.  Can we -- do you know how tall this boy was?

A. No, I don't.

Q. Do you know that he was twelve years old?

A. I do.

Q. Do you know that he weighed about 110 pounds?

A. Okay.

Q. Did you know that?

A. Again, I'm sure I did.

```
 1              want me to answer that.
 2       Q.     (By Mr. Pineiro)  Okay.  Can you go to
 3   the report of Mr. Lopez, please?
 4       A.     Yes.
 5       Q.     What was your understanding that
 6   Mr. Lopez did to Mr. Torres?
 7       A.     My understanding was he encountered
 8   Mr. Torres on the ground, that he was struggling with
 9   Officer Leahy and Officer Dunn, was resisting, Officer
10   Lopez ran up, told him he was going to stop resisting
11   or I'm going to hit you.  In officer Lopez's judgment,
12   he was still resisting.  Struck him twice.  At which
13   point, Mr. Torres supplied his arms from underneath
14   him, and they were able to get him into custody.
15       Q.     Under what circumstances can an officer
16   strike somebody with a baton in the head?
17              MR. EMMA:  Objection.
18       Q.     (By Mr. Pineiro)  Go ahead.
19       A.     In a lethal force encounter.
20       Q.     Meaning -- when you say a lethal force
21   encounter, what do you mean by that, Chief?
22       A.     I mean if the officer's life is in
23   jeopardy and he believes it's a lethal force
24   encounter, all bets are off.
```

1    Q.    Do you know -- have you reviewed any
2 photographs of this case?
3    A.    I've seen the booking photos, and I've
4 seen what you have here.
5    Q.    Do you have any photographs that suggest
6 to you whether this kid was hit with a baton on the
7 top of the head?
8    A.    No.
9    Q.    Would you please turn to Mr. Dunn's
10 report?
11    A.    Yes.
12    Q.    Can you read so that the court
13 stenographer can catch it from this middle paragraph
14 here, Mr. Towards was not following?
15    A.    Sure.  Mr. Torres was not following
16 Officer Leahy's commands to lay on the ground.  Due to
17 the serious nature of the call, the fact that one
18 firearm had already been recovered, Officer Dunn was
19 in fear of his life and that of Officer Leahy.
20    Q.    Could you read the next sentence?
21    A.    Officer Dunn then ran at Mr. Torres and
22 tackled him to the ground.  Officer Dunn and Leahy
23 struggled with Mr. Torres to get control of his hands.
24 Mr. Torres was struggling to keep his hands under his

```
 1   on the top of the head?
 2        A.     Okay.
 3        Q.     Let me ask a question.  Under what
 4   circumstances would a Holyoke Police Officer be
 5   allowed to strike somebody with a baton on the top of
 6   head?
 7        A.     Lethal force encounter.
 8        Q.     Do you believe that this encounter that
 9   the police officers had with Felix Torres was a lethal
10   police encounter?
11        A.     It was -- it could have been.
12        Q.     It could have been down.  Do you believe
13   this was a lethal police encounter?
14        A.     Absolutely.  Officer Leahy stopped him at
15   gunpoint.  They had shots fired.
16        Q.     So, if it turns out that the photograph
17   here that's depicted as Exhibit 15 represented a
18   strike with a police baton, then in your view, that
19   would be an acceptable use of force?
20        A.     You're asking me.  My understanding is
21   Officer Lopez struck him in the leg and lower back.
22   He didn't strike him in the head.  That is my
23   understanding of the facts and circumstances.
24        Q.     Yup.
```

1  A.     He didn't indicate that he had struck him
2  in the head with the baton at all.
3  Q.     But if you --
4  A.     Hear me out.  Let me answer the question.
5  Q.     Sure.
6  A.     And I'm telling you, I think the officers
7  showed great restraint on the night in question, and
8  I'm telling you that I believe this was a lethal force
9  encounter.  As far as I know, Officer Jabet Lopez did
10 not strike your client in the head.
11 Q.     So, but if this were to be a strike in
12 the head from a baton, would that in your mind comply
13 with the use of force policy of the Holyoke Police
14 Department on February 8th of 2014?
15           MR. EMMA:  Objection.
16           THE WITNESS:  You know, it's
17   speculative, at best.  I think you'd have to
18   take a look at that.  That's not the facts and
19   circumstances I understand.
20 Q.     (By Mr. Pineiro)  Okay.  So, what do you
21 need to do -- when you say it's speculative, what do
22 you need to do to be completely sure that this was not
23 a head strike from the point of view of a police
24 supervisor and administrator?