UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS - WESTERN DIVISION

Civil Action No: 3:17cv30031

**JANETTE HERNANDEZ PAGAN, PPA**
**F.H., a minor**,
Plaintiff
v.
**CITY OF HOLYOKE, A MUNICIPAL CORPORATION,**
Officer **THOMAS J. LEAHY,** Officer **JAMES DUNN,**
Officer **JABET LOPEZ**,
Defendants

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY (doc. no. 96)

In doc. No 96, the Plaintiff moves to exclude from introduction at trial any and all evidence and/or testimony regarding the opinion of Dr. Zamir Nestelbaum which defendants may attempt to admit as psychiatric 'expert' opinion testimony. (Dr. Nestlebaum's report and CV are attached as Exhibit "A"). The Defendants oppose the Plaintiff's Motion in Limine for the following reasons.

Admission of expert testimony is a matter for the trial court's discretion. *Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir. 1980). The admission of expert testimony is governed by Federal Rule of Evidence 702, which requires that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 "imposes a gate-keeping function on the trial judge to ensure that an expert's testimony `both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Mooney,* 315 F.3d 54, 62 (1st Cir.2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509

1

U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

The Plaintiff challenges the following opinion of Dr. Nestelbaum pertaining to the diagnosis of adjustment disorder as "vague" or "conclusory" and "not falling within the penumbra of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and *Commonwealth v. Lanigan,* 419 Mass 15 (1994)". The doctor's opinion is as follows (the name of the minor Plaintiff is redacted and replaced with "FTH").

> *It is my opinion based upon a reasonable medical and psychiatric certainty, that [plaintiff FTH, a minor] had a diagnosis of Adjustment Disorder with mixed emotional features. It is also possible that he suffered a mild concussion in the context of his arrest by the Holyoke Police Department. It is possible, though unclear, that [plaintiff, FTH, a minor] may have had a mild, acute stress disorder for several weeks after the incident. It is my opinion, based on a reasonable degree of medical certainty that there is no clear evidence that [plaintiff, FTH, a minor] had a post-traumatic stress disorder as noted above. The Gandara Clinic in evaluating [plaintiff, FTH, a minor] initially considered a diagnosis of PTSD but shortly thereafter changed the diagnosis to Adjustment Disorder. There is also no evidence of a diagnosis of post-concussive syndrome, many symptoms of which are quite similar to and adjustment disorder or possibly an acute stress disorder.*

The Defendants assert that Dr. Nestelbaum's opinion "based upon reasonable psychiatric certainty" is properly admissible under Federal Rules of Evidence 702 and 704.

**Rule 702. Testimony by Expert Witnesses**
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Whether the opinion is "vague" or "conclusory" goes to weight, *not expertise*, and may be subject to a voir dire of Dr. Nestelbaum.

The Plaintiff further challenges Dr. Nestelbaum's opinion on the ground it states an ultimate issue for jury determination. However, Rule 704 specifically permits an expert opinion to embrace an ultimate issue.

> **Rule 704 Opinion on an Ultimate Issue**
> (a) IN GENERAL—NOT AUTOMATICALLY OBJECTIONABLE. An opinion is not objectionable just because it embraces an ultimate issue.

Additionally, the Plaintiff argues that the doctor's opinion must be the result of an examination of the Plaintiff coupled with a clear basis of such opinion. Neither is required. Rule 705 does not require the disclosure of facts or data underlying an expert opinion:

> **Rule 705. Disclosing the Facts or Data Underlying an Expert's Opinion**
> Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

Yet, Dr. Nestelbaum does provide the following multiple bases for his opinion (minor's name redacted and replaced with "FTH").

> *The Gandara Clinic in evaluating Mr. FTH initially considered a diagnosis of PTSD but shortly thereafter changed the diagnosis to Adjustment Disorder. There is also no evidence of a diagnosis of post-concussive syndrome, many symptoms of which are quite similar to an adjustment disorder or possibly an acute stress disorder.*
>
> *Dr. Rosen, a neurologist, who was treating Mr. FTH noted that he had three mild concussions in two years, including the incident on February 8, 2014, during the summer of 2015 and during January 2016. In all three incidents, he was dizzy and vomited once and had a headache for about a week or two and then recovered. Dr. Rosen noted very clearly that "it is not clear to me at all that his problems in school are related to these concussions." She*

*noted that if he continued to struggle in school she may refer him for neuropsychological testing. It is my opinion based on reasonable medical certainty that Dr. Rosen suggested a possibility of neuropsychological testing because there could be the onset of other conditions such as a learning disability or attentional problems that could be in play rather than any post-concussive concerns.*

*It is my opinion based on a reasonable medical certainty that the incident in question where FTH was arrested by the police is one of several factors that affected him during his childhood and adolescence that could contribute to feeling traumatized. Of note, it is unclear why FTH, a 12-year-old, would be out late at night during the winter when it is dark in the streets and decided to follow someone described as not a friend but an acquaintance. This individual admitted to the Holyoke Police Department that he had been smoking PCP before going out with the gun. A more expected reaction from a 12-year-old would be to become frightened and leave the scene and perhaps try to help the individual by calling others for help, including his mother and family. Nevertheless, FTH was in the streets and possibly was consorting with older individuals in the neighborhood who had problems with drugs or alcohol or mental illness. This could explain why he followed Mr. Zayes several blocks over to the bridge. At that point, Mr. Zayes started shooting his gun, both up in the air and at cars driving by and according to police reports hit four cars, and there were numerous victims that were in the cars but apparently were not shot directly. This event itself, before police arrived, frightened FTH as noted in his deposition and records. Subsequent to that, the police arrived, who responded because of a shooting. It was in that context that FTH, who did not follow police orders consistently, was arrested. FTH did sustain physical injuries as noted in the police reports.*

*There were other factors as well that likely, in my opinion due to reasonable medical certainty, contributed to producing trauma. FTH's step-father had domestically abused his mother, and FTH was a witness to this at least verbal violence. FTH had a number of behaviors that may have been caused by an experience of these multiple factors. It is also my opinion based on reasonable medical certainty that FTH's behavior was not atypical of adolescence, including mood lability and oppositional defiant behavior. These behaviors lasted, according to FTH's mother, for about 18 months. Following that period, there are numerous reports of FTH doing much better in all phases, including school, relationships and behaviors with others. Over the past two years since FTH moved with his mother and*

4

*family to Florida, there are numerous reports of his doing well, getting good grades, having a girlfriend, socializing with others and having no disciplinary problems in school. It is my opinion based on reasonable medical certainty that the issues that FTH experienced over approximately one to one-and-a-half years after the February 8, 2014 incident resolved completely. There is no evidence that his mild concussions persisted beyond a very short period of time, less than a month and likely no more than one to two weeks, and symptoms fully resolved. As Dr. Rosen noted, he had no headaches in between these mild concussions. It is my opinion based on a reasonable medical certainty that there is no evidence that FTH suffered from any post-concussive syndrome or post-traumatic stress disorder as noted by Dr. Alvarez. Neither Dr. Alvarez nor Dr. Chirkov in their reports noted the context of the incident of February 8, 2014. They did not comment on the very dangerous situation that FTH was involved in over a period of time that night, or why he was out in the streets at that hour with a clearly mentally ill, intoxicated individual, possibly on PCP.*

The Plaintiff argues that Dr. Nestelbaum not performing an examination on the Plaintiff is disqualifying. However, under Rule 702 (b), an examination of the Plaintiff is not required

> **Rule 702. Testimony by Expert Witnesses**
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (b) the testimony is based on sufficient facts or data;

See also, *Rivera v.Turabo Medical Center Partnership D/B/A Hospital Interamericano De Medecina Avanzada,* 415 F. 2nd 162 (1st Cir. 2005) ( physical examination not required for medical expert testimony)

Based on the forgoing, the Defendants request that the Plaintiff's Motion in Limine "to exclude from introduction at trial any and all evidence and/or testimony regarding the opinion of Dr. Zamir Nestelbaum which defendants may attempt to admit as psychiatric 'expert' opinion testimony" be denied.

Respectfully submitted:

 /s/ Charles J. Emma, counsel for the Defendants
 City of Holyoke, Thomas J. Leahy and James Dunn
 Charles J. Emma BBO # 542126
 PO Box. 510040
 Punta Gorda, Florida 33951
 CharlesEmmaLaw@gmail.com
 Phone: (413) 297-6367
 Dated: May 10, 2019

/s/Austin M. Joyce, counsel for Defendant Jabet Lopez
Austin M. Joyce, Esquire BBO #255040
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace, Worcester, MA.01609
ajoyce@rja-law.com
Phone: (508)-754-7285

CERTIFICATE OF SERVICE

(For: DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE)

I, Charles J Emma, as attorney for the Defendants CITY OF HOLYOKE, A MUNICIPAL CORPORATION, Officer THOMAS J. LEAEY and Officer JAMES DUNN, do hereby certify that on May 10, 2019 served the forgoing by filing through the ECF system and notice will be sent electronically to the registered participants as identified on the notice of electronic filing (NEF).

/s/ Charles J. Emma

Charles J. Emma, Esq. BBO # 542126

PO BOX 510040

Punta Gorda, Florida, 3951

413-297-6367

CharlesEmmaLaw@gmail.com